Enrique CORDERO and Debra Lopez, Administrators of the Estate of Henry Cordero, David Garcia and Johanna Delgado, A Minor, by Her Parents and Natural Guardians Iris N. Aluelo and Jose A. Delgado, Appellants,

v.

POTOMAC INSURANCE COMPANY OF ILLINOIS, General Accident Insurance Company, Javier Cordero and Z & A Auto Sales, Appellees.

Superior Court of Pennsylvania.

Submitted Nov. 13, 2001.

Filed March 11, 2002.

Dale G. Larrimore and Thomas S. Farnish, Philadelphia, for Enrique Cordero and Debra Lopez, appellants.

Joseph P. Connor, Paoli, for Z & A Auto Sales, appellee.

Angela Maione–Costigan, Philadelphia, for Javier Cordero, appellee.

Frederick B. Buck, Philadelphia, for Potomac Insurance, appellee.

BEFORE: JOYCE, STEVENS, and BECK, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the order issued by the Court of Common Pleas of Philadelphia County rendering declaratory judgment in favor of Appellees Potomac Insurance Company of Illinois (Potomac Insurance), General Accident Insurance Company (General Accident), Javier Cordero, and Z & A Auto Sales (Z & A).

The trial court declared that Appellees had no duty to pay to Appellants benefits under a Commercial Umbrella Insurance Policy, which was issued to Z & A by Potomac Insurance, a division of General Accident. On appeal, Appellants contend that Javier Cordero is an insured under the Commercial Umbrella Insurance Policy, and, therefore, there was up to one million dollars in additional coverage available for Appellants' injuries arising out of the automobile accident at issue. We affirm.

¶ 2 The relevant facts and procedural history are as follows: In April of 1999, Javier Cordero took his vehicle to Z & A to be serviced, and, in return, Z & A loaned Javier Cordero a 1997 Honda Civic, which was owned by Z & A. Z & A is a named insured under two policies: (1) A Garage Policy issued by Potomac Insurance with a policy limit of one million dollars in liability and one hundred thousand dollars in nonstacked underinsured motorist coverage per accident, and (2) A Commercial Umbrella Policy issued by Potomac Insurance, with a policy limit of one million dollars per occurrence in liability coverage as excess limits over the Garage Policy.

¶ 3 On April 14, 1999, Javier Cordero was operating the loaner car, with Henry Cordero, David Garcia, and Johanna Delgado as passengers. Near Second and Luzerne Streets in Philadelphia, Javier Cordero lost control of the Honda Civic, resulting in fatal injuries to Henry Cordero and serious and permanent injuries to David Garcia and Johanna Delgado.

¶ 4 Enrique Cordero and Debra Lopez, administrators of Henry Cordero's estate, David Garcia, and Johanna Delgado, a minor by her natural parents Iris N. Aluelo and Jose A. Delgado (collectively Appellants), demanded that Potomac Insurance and General Accident tender two million

dollars, which is the combined liability coverage, and an additional one hundred thousand dollars in underinsured motorist coverage to settle the claims against Javier Cordero. Potomac Insurance and General Accident refused the demand, but tendered thirty thousand dollars to Appellants in settlement of all claims. The offer represented the statutory minimum limits of automobile liability coverage required under the Pennsylvania Motor Vehicle Financial Responsibility Law (PMVFRL), 75 Pa. C.S.A. § 1701 *et seq.*[1]

¶ 5 Appellants rejected Potomac Insurance and General Accident's contention that Appellants were entitled to only thirty thousand dollars, and, on July 7, 2000, they filed a complaint seeking a declaratory judgment as to their rights and Potomac Insurance's obligations under the Garage Policy at issue. Specifically, Appellants sought a declaration and judgment indicating that they were entitled to proceeds under the Garage Policy and the Commercial Umbrella Policy. Potomac Insurance and General Accident filed an answer with new matter and a counterclaim in which they sought a declaration that Appellants are entitled to thirty thousand dollars only under the PMVFRL. Z & A and Javier Cordero filed answers with new matter to Appellants' complaint, contending that they were entitled to judgment as to Appellants, and/or in the alternative, indemnification as to Potomac Insurance and General Accident.

¶ 6 Based on stipulated facts, the matter proceeded to oral argument on April 2, 2001, at which time Appellants' attorney conceded that Appellants' coverage under the Garage Policy was limited to thirty thousand dollars, which represented the limits under the PMVFRL, and that they were not entitled to underinsured motorist benefits. N.T. 4/2/01 at 15–16. As such, the only issue before the trial court was whether Appellants were entitled to recovery under the Commercial Umbrella Policy, which provided for an additional one million dollars in coverage. In its opinion dated April 30, 2001, the trial court concluded that Javier Cordero was a permissive user of a principally garaged automobile under the Garage Policy, and that, based on the clear language of the Commercial Umbrella Policy, Javier Cordero was not a covered insured. As such, the trial court concluded that Appellants were not entitled to proceeds from the Commercial Umbrella Policy and were entitled only to the thirty thousand dollars tendered to Appellants by Potomac Insurance and General Accident. By order dated April 30, 2001, the trial court entered judgment in favor of Appellees, and this timely appeal followed.[2] The trial court did not order a Pa.R.A.P.1925(b) statement, and no such statement was filed.

[T]he purpose of the Declaratory Judgments Act…is to afford relief from uncertainty and insecurity with respect to legal rights, status, and other relations. Under the Declaratory Judg-

---

1. 75 Pa.C.S.A. § 1702 provides that "financial responsibility" is defined as:
   The ability to respond in damages for liability on account of [motor vehicle accidents] in the amount of $15,000.00 because of injury to one person in any one accident, in the amount of $30,000.00 because of injury to two or more persons in any one accident, and in the amount of $5,000.00 because of damage to property of others in any one accident.

2. We note that Appellants did not file post-trial motions. This was proper. *See State Farm Fire and Casualty Company v. Craley,* 784 A.2d 781 (Pa.Super.2001) (*en banc*) (holding that a decision and verdict which affirmatively and negatively declares the rights of the parties is a final judgment, and, therefore, post-trial motions are unnecessary).

ments Act, the trial court is empowered to declare the rights and obligations of the parties involved. Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

*Robson v. EMC Insurance Companies,* 785 A.2d 507, 509 (Pa.Super.2001) (citations, quotations, and quotation marks omitted).

■■■ ¶ 7 "The interpretation of a contract of insurance is a matter of law for the courts to decide." *Richmond v. Prudential Property and Casualty Insurance Company,* 789 A.2d 271, 274 (Pa.Super.2001) (quotation omitted). "When interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract." *Robson,* 785 A.2d at 510 (citation omitted). Where terms are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning. *Lititz Mutual Insurance Co. v. Steely,* —— Pa. ——, 785 A.2d 975 (2001). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Richmond,* 789 A.2d at 274 (quotation omitted). "[A] provision is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* (quotation and quotation marks omitted).

¶ 8 All parties agree that Javier Cordero is entitled to coverage under the Garage Policy at issue, which provides, in relevant part, the following regarding coverage and the definition of "insured:"

"GARAGE OPERATIONS"-OTHER THAN COVERED "AUTOS" We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos."

Liability Coverage for Garage Operations, Section II, A (Coverage).

The following are 'insureds' for covered 'autos:'

(1) You for any covered "auto."

(2) Anyone else while using with your permission a covered auto you own, hire, or borrow, **except:**

***

(d) Your customers, if your business is shown in the Declarations as an auto dealership. However, if a customer of yours:

(i) has no other available insurance...they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged.

Liability Coverage for Garage Operations, Section II, A, 1(a)(2)(d)(i) (emphasis added). Moreover, all parties acknowledge that the Garage Policy incorporated Pennsylvania's Underinsured Motorist coverage Nonstacked Endorsement:

The limit of insurance under this coverage shall be reduced by all sums paid by or for anyone who is legally responsible. This includes all sums paid for the same damages under this Coverage Form's LIABILITY COVERAGE....

■■■ ¶ 9 Based on the aforementioned provisions, Appellants conceded at oral argument before the trial court that, under

the Garage Policy, they are entitled to thirty thousand dollars only since Javier Cordero was a permissive user of the Honda Civic.[3] This is because the Honda Civic was principally garaged and the policy limited coverage "up to the compulsory or financial responsibility law limits." Section II, A, 1(a)(2)(d)(i). However, this does not end our inquiry since Appellants argue that coverage is available under the Commercial Umbrella Policy. Specifically, Appellants argue that since Javier Cordero was an "insured" under the Garage Policy, he is an "insured" under the Commercial Umbrella Policy. Specifically, Appellants point to the following provisions, which discuss coverage:

**Coverage A–Excess Follow Form Liability.[4]**

We will pay on behalf of the **insured** those sums, in excess of the total amount payable under the terms of any underlying insurance stated in the Declarations, that the insured becomes legally obligated to pay as damages because of **bodily injury, property damage, personal injury, or advertising injury.**

This coverage is subject to the same terms, conditions, agreements, exclusions, and definitions as any **underlying insurance** stated in the Declarations except when they are inconsistent with provisions of this coverage in which case the provision of this coverage will apply.
Commercial Umbrella Policy, Section I (Coverages) (emphasis in original).

For Coverage A, the following are **insureds:**
1. Any person or organization who is an insured under any policy of **underlying insurance.** The coverage afforded such **insureds** under this policy will not be broader than the **underlying insurance** except for this policy's Limit of Insurance.
Commercial Umbrella Policy, Section II, 1 (Coverage for A) (emphasis in original). The "Limit of Insurance" is defined as follows:

The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay with respect to the Coverage A and Coverage B regardless of the number of:
a. insureds;
b. claims made or suits brought; or
c. persons or organizations making claims or bringing suits.
Commercial Umbrella Policy, Section III, 1(a,b,c).

¶ 10 As the Commercial Umbrella Policy clearly states, coverage is subject to the same terms, conditions, agreements, exclusions, and definitions as the underlying insurance, which in this case is the Garage Policy.[5] Also, the Commercial Umbrella

---

3. In their appellate brief, Appellants suggest that the Declarations page of the Garage Policy indicates that Z & A is a "non-franchised auto dealer." Appellants contend that a "non-franchised auto dealer" is not the same as an "auto dealership," and, therefore, they are entitled to one million dollars under the Garage Policy. This argument is waived. At the evidentiary hearing, Appellants conceded that they were entitled to thirty thousand dollars only under the Garage Policy and that the only issue before the trial court was whether additional coverage was provided under the Commercial Umbrella Insurance Policy.

4. Coverage A adds excess limits over scheduled underlying coverages. That is the coverage at issue in this case.

5. Here, the Commercial Umbrella Policy defines "underlying insurance" as "coverage afforded under insurance policies designated in the Schedule of Underlying Insurance on the Declarations page of this policy." The Garage Policy at issue is specifically listed on the declarations page, and, therefore, the Garage Policy qualifies as an "underlying insurance."

Policy indicates that its coverage is not broader than the underlying insurance and that its policy is to add excess limits over scheduled underlying coverage. As indicated previously, with regard to the underlying insurance, the only basis upon which Javier Cordero qualified as an "insured" under the Garage Policy was as a customer using a covered automobile with Z & A's permission. The Garage Policy is clear in its treatment of such customers. For example, the plain language of the Garage Policy excludes permissive users such as Javier Cordero from primary coverage and limits the customers to Pennsylvania's required financial responsibility law limits. We conclude that the clear import of this language is that customers who are permissive users of principally garaged automobiles under the Garage Policy are not insureds under the policy, except for that which is legally required. The clear language of the Commercial Umbrella Policy indicates that it will pay excess over the underlying insurance only if the insured qualifies for the underlying insurance by its own terms, and does not apply simply because of statutory mandates.

■ ¶ 11 "An auto dealer may well purchase umbrella coverage to protect his or her business; however, he or she will not likely purchase such additional coverage for his or her customers. This is particularly so where, as here, the law does not require it." *Bowers v. Estate of Feathers*, 448 Pa.Super. 263, 671 A.2d 695, 698 (1995). We specifically conclude that the Commercial Umbrella Policy was designed to expand the amount, but not the scope of coverage. *See Globe Indemnity Company v. Jordan*, 634 A.2d 1279 (Me.1993).[6] Statutes mandating minimum primary coverage are not intended to affect umbrella policies, whose purpose is to protect the

assets of the named insured and not the customers' assets. *Id.* Simply put, because Javier Cordero's primary coverage under the Garage Policy was by virtue of the statutory mandates, he was not entitled to coverage under the Commercial Umbrella Policy.

¶ 12 Affirmed.

---

6. While we are not bound by the Supreme Court of Maine's decision, we find it to be persuasive and have applied the reasoning to this case.