**AMERICAN REHABILITATION AND PHYSICAL THERAPY, INC.**
**Appellee,**

v.

**AMERICAN MOTORISTS INSURANCE COMPANY**
**Appellant.**

Superior Court of Pennsylvania.

Argued March 11, 2003.
Filed July 23, 2003.

---

**3.** Now that the record has been remanded to the trial court, Bishop is free to pursue his bail request there.

Andrew J. Gallogly, Philadelphia, for appellant.

Susan M. Danielski, Philadelphia, for appellee.

Before: DEL SOLE, P.J., GRACI, and BECK, JJ.

GRACI, J.

¶ 1 Appellant, American Motorists Insurance Company (hereinafter "AMICO"), appeals from the order entered on August 21, 2002, granting summary judgment in favor of Appellee, American Rehabilitation and Physical Therapy, Inc. (hereinafter "American Rehab"), in connection with American Rehab's claims for declaratory judgment in the amount of $16,849.28. For the reasons that follow, we reverse.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 The lower court summarized the background of this case as follows:

This declaratory judgment action was brought by the insured, [American Re-hab] seeking a determination that [AMICO] must provide a defense and/or indemnification under a businessowners policy in connection with claims arising from the case of *Holloman v. Marconi, et al,* C.P. Phila. November Term, 1998, No. 4011. Before the court are the parties' cross-motions for summary judgment....

The underlying suit arises from a motor vehicle accident that occurred in April 1997. Holloman alleged that he sustained injuries and received treatment at American Rehab. During a session of physical therapy, his arm was burned from a moist heating pad. Marconi filed a joinder complaint against American Rehab, Dr. Diamond and Dr. Olarsch alleging that any of Holloman's injuries to his arm were the result of their negligence. American Rehab submitted the claim to AMICO under its Businessowners policy. AMICO denied coverage on the basis of an exclusion for professional services.

Opinion, 6/22/01, at 1.

¶ 3 The declaratory judgment action was initiated by American Rehab on June 6, 2000. American Rehab also brought a claim for breach of contract, seeking reimbursement of fees and costs associated with defending the underlying action. In its counterclaim, AMICO sought a declaration upholding its coverage disclaimer.

¶ 4 American Rehab filed a motion for summary judgment on March 13, 2001, and on March 14, 2001, AMICO filed the same. On June 22, 2001, the trial court issued an order granting American Rehab's motion, denying AMICO's motion, and declaring that AMICO must provide a defense and indemnification to American Rehab in the underlying case. Further, the order indicated that an award of attorney's fees and costs would follow the conclusion of an evidentiary hearing. Following the parties' filing of a stipulation as to

damages, however, the trial court entered an order on August 21, 2002, ordering that a final and appealable order be entered, granting summary judgment for American Rehab in the amount of $16,849.28.

¶ 5 AMICO filed its notice of appeal on September 18, 2002 and now raises the following issues on appeal:

I. Can the medical malpractice insurance crisis be solved by forcing general liability insurers to provide gratuitous coverage for professional malpractice claims, despite policy language plainly stating that no coverage is provided for bodily injury due to the rendering of professional services?

II. Did the trial court err in determining that a general liability insurer must defend a physical therapy facility in connection with claims for burn injuries allegedly suffered by a patient while receiving physical therapy, where the policy excluded coverage for injury due to the rendering of any professional service including medical, nursing, and therapeutic services or treatment, merely because it was claimed that the incident resulted in part from the negligent training, supervision and monitoring of employees?

Brief for Appellant, at 4.

## II. DISCUSSION

¶ 6 First, we must determine whether this appeal is properly before us.

American Rehab's Amended Complaint consists of two counts. The first count seeks relief in the form of declaratory judgment and the second count seeks damages for breach of contract. In granting American Rehab's motion for summary judgment and denying AMICO's motion for summary judgment, the trial court declared that AMICO must provide a defense and indemnification to American Rehab in the underlying case. The lower court, however, did not address the claim for attorney's fees.

> Although the [Declaratory Judgment] Act provides that the declaration shall have the "force and effect of a final judgment or decree", this partial adjudication does not become appealable merely because it is cast in the form of a declaratory judgment. [American Rehabilitation's] complaint in this matter, although captioned a declaratory judgment, sought ordinary civil relief and remedies in the form of a declaration of coverage **and** damages....

*Moore Motors, Inc. v. Beaudry,* 775 A.2d 869, 870 (Pa.Super.2001) (quoting *Bolmgren v. State Farm Fire and Cas. Co.,* 758 A.2d 689[, 691] (Pa.Super.2000)); *see also Cresswell v. Pennsylvania Nat. Mut. Cas. Ins. Co.,* 820 A.2d 172 (Pa.Super.2003) (partial adjudication of declaratory judgment claims did not render the orders final and appealable).[1] Because the June 22, 2001, order did not resolve the issue of attorney's fees and costs, it was interlocutory and, therefore, not appealable. How-

---

1. We find this Court's decision in *State Farm Fire and Cas. Co. v. Craley ex rel. Estate of Craley,* 784 A.2d 781 (Pa.Super.2001) (*en banc*), *appeal granted,* 568 Pa. 704, 796 A.2d 985 (Pa.2002), to be distinguishable. In *Craley,* appellant's appeal was quashed where post-trial motions rather than an immediate appeal were filed. *Id.* at 786. The trial court's order was found to be final and appealable where a determination of both liability and damages was made, thus, disposing of all claims of all parties. *Id.* at 784–785. In the present case, however, the June 22, 2001, order made a determination as to liability but not damages and thus, was not a final and appealable order. Moreover, "a recent decision from our Supreme Court, *Chalkey v. Roush,* 569 Pa. 462, 805 A.2d 491 (2002), has cast serious doubt on our decision in *Craley,* which is presently on appeal." *Liberty Property Trust v. Day–Timers, Inc.,* 815 A.2d 1045 (Pa.Super.2003).

ever, AMICO's appeal from the August 21, 2002, order, which included a stipulation regarding damages, is properly before us.

¶ 7 We will now proceed to address the merits. AMICO argues that Holloman sustained injuries during the course of medical treatment or physical therapy, and thus, the professional services exclusion of the policy barred coverage. Brief for Appellant, at 13. We agree.

■ ¶ 8 "Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence." *State Auto. Mut. Ins. Co. v. Christie*, 802 A.2d 625, 627–628 (Pa.Super.2002) (quotation omitted) (citation omitted).

¶ 9 Under the Declaratory Judgments Act, 42 Pa.C.S.A. § 7531 *et seq.*, "the trial court is empowered to declare the rights and obligations of the parties involved." *Id.* at 627. "A[n] [insurance] carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the third party's complaint triggers coverage." *Minnesota Fire and Cas. Co. v. Greenfield*, 805 A.2d 622, 625 (Pa.Super.2002), *appeal granted*, 820 A.2d 162 (Pa.2003) (citation omitted). "[I]t is necessary to look at the factual allegations contained in the complaint." *Id.* (citations omitted).

¶ 10 "The interpretation of a contract of insurance is a matter of law for the courts to decide." *Cordero v. Potomac Ins. Co. of Illinois*, 794 A.2d 897, 900 (Pa.Super.2002) (citation omitted). "When interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract." *Id.* (citation

omitted). "Where terms are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning." *Id.* (citation omitted). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Id.* (citation omitted). "[A] provision is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* (citation omitted).

■ ¶ 11 The underlying amended complaint alleges that Holloman suffered "severe burns and scarring to right arm while undergoing medical treatment for the injuries sustained in this accident." Amended Complaint, 1/5/99, at ¶ 8. Further, the joinder complaint alleges that Dr. Olarsch, Dr. Diamond and American Rehab "provided medical care, treatment and services to [Holloman], including without limitation evaluation and physical therapy", Joinder Complaint, 7/15/99, at ¶ 8, and also alleges that "during his course of treatment ... [Holloman], on or about June 4, 1997, allegedly sustained severe burns and scarring to his right arm", *id.* at ¶ 9. The joinder complaint specifically avers that:

"The negligence and carelessness of Additional Defendants [American Rehab, Dr. Olarsch and Dr. Diamond] consisted of the following:

(a) failing to provide physical therapy treatment in a reasonable and safe manner so as not to cause burns to [Holloman's] arm;

(b) failing to take adequate precautions during physical therapy treatment so as to prevent burns to [Holloman's] arm;

(c) failing to properly and adequately train their agents, servants, workmen and employees;

(d) failing to adequately and properly supervise their agents, servants, workmen and employees;

(e) failing to adequately and properly monitor the treatment provided by their agents, servants, workmen and employees; and

(f) failing to properly and adequately warn [Holloman] of the dangers of the treatment provided by Additional Defendants or their agents, servants, workmen and employees.

*Id.* at ¶ 11. The joinder complaint further avers that, "If [Holloman] sustained injuries during the course of his medical treatment as alleged in the Amended Complaint, said injuries were due to the carelessness and negligence of Additional Defendants, [American Rehab, Dr. Olarsch and Dr. Diamond] who are liable to [Holloman] for the portion of damages they caused, are jointly and severally liable to [Holloman] with Defendants [Marconi (operator of vehicle involved in accident) and Nocella (owner of vehicle involved in accident)] or are liable to Defendants [Marconi and Nocella] for indemnity for that portion of [Holloman's] damages that they caused." *Id.* at ¶ 12.

¶ 12 Based on the content of the factual averments set forth above, we agree with AMICO that the alleged burn injuries and scarring occurred during the rendering of professional medical treatment or physical therapy. Brief for Appellant, at 13. We must now examine the policy to determine whether the claim is excluded by its terms.

¶ 13 The relevant portion of the "professional services" exclusion of the businessowners insurance policy issued by AMICO to American Rehab provides as follows:

**B. EXCLUSIONS**

**1. Applicable to Business Liability Coverage**

This insurance does not apply to:

. . .

**j. Professional Services**

"Bodily injury," "property damage," "personal injury" or "advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:

. . .

4) Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

5) Any health or therapeutic service, treatment, advice or instruction;

Businessowners Liability Coverage Form, at 2–6. The claims asserted against American Rehab in the underlying action seek damages for "bodily injury" allegedly suffered by Holloman "due to" the "rendering" of medical, health or therapeutic services or treatment at the hands of the insured and thus, plainly fall within the scope of the "professional services" exclusion.

■ ¶ 14 The policy's exclusion is not avoided by American Rehabilitation's allegations of negligent training, supervision, and monitoring of medical personnel in its joinder complaint. The issue of whether the hiring and supervision of employees to assist with the care of a physician's patients is a part of providing medical services has not previously been addressed by the courts of this jurisdiction. Therefore, we look to other jurisdictions which, although not binding, we find persuasive. The Supreme Court of New Mexico, in *Millers Casualty Ins. Co. of Texas v. Flores*, 117 N.M. 712, 876 P.2d 227 (1994), held that "[t]he hiring and supervision of employees to assist in giving care to [the physician's] patients constituted an integral part of providing medical services to these patients ... and [the physician's] failure to hire a competent assistant, as well as his failure to adequately train and

supervise her, was a failure to render adequate medical services." *Flores,* 876 P.2d at 230 (citations omitted). "Under the policy at issue ... coverage for [the physician's] failure to render adequate medical services, which gave rise to [the patient's] injuries, was excluded from coverage under the "professional services" clause." *Id.* Similarly, the California Court of Appeals, in *Northern Ins. Co. of N.Y. v. Superior Court,* 91 Cal.App.3d 541, 154 Cal. Rptr. 198 (1979), found

> that a physician has the professional duty to correctly identify a surgical patient before undertaking a particular procedure. The fact that the physician utilizes the assistance of a nonphysician in the performance of that duty cannot alter the professional nature of that nondelegable duty. The ultimate and unassailable fact is that in the case at bench, the injury caused to [the patient] occurred during, and as a direct result of the performance of professional services.
>
> The conclusion, therefore, is inescapable that the exclusion in petitioner's policy is applicable, absolving petitioner from any obligation to defend and/or indemnify real parties in interest with respect to the [patient's] claims.

*Northern Ins. Co. of N.Y.,* 91 Cal.App.3d at 544, 154 Cal.Rptr. 198.

¶ 15 In *Duncanville Diagnostic Center, Inc. v. Atlantic Lloyd's Ins. Co. of Texas,* 875 S.W.2d 788 (Tex.App.1994), a four-year-old child was taken to the Center for routine radiological examinations and was rendered unconscious after two technicians did not properly measure a dosage of chloral hydrate before giving it to the child. The child died later that day. The Texas Court of Appeals held that coverage was barred by a professional services policy exclusion, in that

> [the child's] death is directly attributable to the allegedly negligent providing of professional medical treatment or the

failure to provide such treatment, not to the negligent performance of an administrative or ministerial task. To the extent the acts involved in this case did not require the exercise of professional medical judgment, the acts were nonetheless an intricate part of the professional medical services provided by the Center and fall within the professional services exclusion.

> . . .
>
> [The child's] death could not have resulted from the negligent hiring, training, and supervision or from the negligent failure to institute adequate policies and procedures without the negligent rendering of professional medical services. The negligent acts and omissions were not independent and mutually exclusive; rather, they were related and interdependent. Therefore, the professional services exclusion operated to exclude coverage not only for the claims of negligence in rendering the professional services but also for the related allegations of negligent hiring, training, and supervision and negligent failure to establish adequate policies and procedures.

*Id.* at 791–792 (citations omitted).

¶ 16 In conformity with the rationale of these cases which we find persuasive, we conclude that the training, supervising and monitoring of employees to assist with the care or treatment of a health care professional's patients is an integral part of providing such professional's service. As such, they are excluded from coverage under the "professional services" exclusion.

¶ 17 We find this Court's decision in *Board of Public Education of the School District of Pittsburgh v. National Union Fire Ins. Co. of Pittsburgh,* 709 A.2d 910 (Pa.Super.1998), to be distinguishable and thus, the trial court's reliance upon it to be misplaced. In that case, the acts arose out of the negligence of the School District,

including its failure to adequately screen individuals and the failure to properly train the teachers, administrators, and employees. *Board of Public Education of the School District of Pittsburgh,* 709 A.2d at 913. This Court found that the trial court erred in granting judgment on the pleadings because the policy did not exclude claims for negligence. Because the complaint included allegations of negligence and these acts were potentially within the coverage of the policy, as the policy did not expressly exclude coverage for claims of negligence, the trial court erred in granting judgment on the pleadings. *Id.* at 914, 917. In the present case, however, claims of negligence were expressly excluded from coverage under the professional services exclusion.

## IV. CONCLUSION

¶ 18 We hold that the rendering of medical services falls within the scope of the "professional services" exclusion and that the training, supervision, and monitoring of employees who assist in providing medical treatment to patients is an integral component of providing medical services. Accordingly, we reverse the order of the lower court and direct, on remand, that it enter summary judgment in favor of AMICO, declaring that it had no duty to defend or indemnify American Rehab in connection with the underlying action.

¶ 19 Order reversed. Case remanded with instructions. Jurisdiction relinquished.