J-A27037-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CYNTHIA CLIFTON, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| JOANNE BRUSCEMI, | : | |
| Appellant | : | No. 76 WDA 2014 |

Appeal from the Order entered on December 17, 2013
in the Court of Common Pleas of Allegheny County,
Civil Division, No. GD 12-24293

| | | |
|---|---|---|
| CYNTHIA CLIFTON, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| JOANNE BRUSCEMI, | : | |
| Appellee | : | No. 107 WDA 2014 |

Appeal from the Judgment entered on December 17, 2013
in the Court of Common Pleas of Allegheny County,
Civil Division, No. GD 12-24293

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED JANUARY 26, 2015**

Joanne Bruscemi ("Bruscemi") appeals, and Cynthia Clifton ("Clifton") cross-appeals from the Order and Judgment entered by the trial court on December 17, 2013, which upheld as enforceable an August 3, 2003 Agreement ("Agreement") between the parties. We affirm.

The trial court aptly summarized the relevant history underlying the instant appeal as follows:

In 1993[,] [] Clifton and [] Bruscemi were involved in a relationship and began living together in an apartment. In 1995[,] [] Clifton and [] Bruscemi moved to a single family home located at 266 Harrison Road, Turtle Creek, PA 15145 ["the Property"]. At that time, the title to the [Property] was solely in [] Clifton's name, but in 2003[,] [] Clifton signed a deed transferring ownership to [] Bruscemi and [] Clifton as joint tenants. The recorded deed contains a clause that makes it subject to [the Agreement] between [] Clifton and [] Bruscemi. Paragraph 4 of that [A]greement states:

If the relationship of [Clifton] and [Bruscemi] should terminate, then [Bruscemi] agrees to transfer the residence immediately, upon vacating the property, back to [Clifton] in exchange for payment by [Clifton] to [Bruscemi] of 50% of the assessed value of the [P]roperty at the time of termination less $60,000.

In October of 2012, the relationship of [] Clifton and [] Bruscemi terminated. [] Clifton then filed the lawsuit that initiated this litigation. The lawsuit requested that [] Bruscemi be compelled to sign a deed transferring her interest in the [Property] to [] Clifton.

… [O]n December 2, 2013[, the trial court] signed a [D]ecree directing [] Bruscemi to transfer her interest in the home to [] Clifton, with no payment due from [] Clifton. The [D]ecree also directed [] Clifton to satisfy a mortgage both [she] and [] Bruscemi had signed and to pay all expenses of the transfer of [] Bruscemi's interest….

Trial Court Opinion, 2/13/14, at 1-2. Both parties filed post-trial motions, which the trial court denied. Thereafter, the trial court entered its Judgment. Bruscemi timely filed an appeal, after which Clifton also filed a Notice of Appeal. Both parties filed timely, court-ordered Pa.R.A.P. 1925(b) Concise Statements of Matters Complained of on Appeal.

**The Bruscemi Appeal (No. 76 WDA 2014)**

We first address the claims raised by Bruscemi. Bruscemi presents the following claims for our review:

[I.] Did the trial court commit an error of law when it concluded that [] Clifton's physically abusive self-help eviction of [] Bruscemi did not render the 2003 Agreement unenforceable?

[II.] In the alternative, did the trial court apply the $60,000 credit referenced within the 2003 Agreement in a manner that was inconsistent with the intent of the parties when it subtracted that amount from one[-]half the assessed value to drive [] Bruscemi's share of the equity, rather than subtract the $60,000 from the full assessed value?

Brief for Bruscemi at 3 (some capitalization omitted).

When reviewing the verdict from a bench trial, we review the evidence of record in the light most favorable to the verdict winner to determine whether competent evidence supports the trial court's findings, and whether the court erred in reaching its conclusions of law. ***Newman Dev. Group of Pottstown, LLC v. Genuardi's Family Mkt., Inc.***, 98 A.3d 645, 652 (Pa. Super. 2014). Upon review, this Court will only reverse if the trial court's findings of fact are unsupported by competent evidence or if it erred as a matter of law. ***Id.*** "We afford the same weight to the trial court's findings of fact as we do a jury's verdict." ***Id.***

Bruscemi first claims that the trial court erred when it failed to conclude that Clifton's "physically abusive self-help eviction" of Bruscemi rendered the Agreement unenforceable. Brief for Bruscemi at 9. Bruscemi

disputes the trial court conclusion that Clifton's "physically abusive self-help measures" do not constitute a breach of the Agreement, as physical abuse is not prohibited by the Agreement. *Id.* According to Bruscemi, the trial court is legally inconsistent when it interprets the Agreement as implying that Bruscemi "is to vacate the house upon [Clifton's] unilateral declaration that the relationship has ended." *Id.* at 9-10 (emphasis omitted). Bruscemi further contends that there is no legal foundation for such an implication, as the parties stood on equal footing and were joint owners with the right of survivorship. *Id.* at 10. According to Bruscemi,

> [i]n light of the court's express finding that [Bruscemi] suffered physical abuse at the hands of [Clifton]—which of necessity caused [Bruscemi] to leave her home—[] Clifton had neither a legal nor equitable basis to enforce the 2003 [A]greement and thereby obtain sole title to the house….

*Id.* Therefore, Bruscemi contends, she is entitled to a full, one-half share of the net fair market value of the Property, after a deduction for the outstanding balance of the mortgage. *Id.*

Bruscemi's claim is one of contract interpretation. When interpreting the language of a contract,

> the intention of the parties is a paramount consideration. ***Thomas Rigging & Constr. Co., Inc. v. Contraves, Inc.***, 2002 PA Super 134, 798 A.2d 753, 755 (Pa. Super. 2002). "In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly." ***Meeting House Lane, Ltd. v. Melso***, 427 Pa.Super. 118, 628 A.2d 854, 857 (1993), *appeal denied*, 537 Pa. 633, 642 A.2d 486 (1994) (citations omitted).

When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent. *Osial v. Cook*, 2002 PA Super 214, 803 A.2d 209, 213 (Pa. Super. 2002). The language of a contract is unambiguous if we can determine its meaning "without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." *Baney v. Eoute*, 2001 PA Super 260, 784 A.2d 132, 136 (Pa. Super. 2001). "When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning." *Cordero v. Potomac Ins. Co. of Illinois*, 2002 PA Super 60, 794 A.2d 897, 900 (Pa. Super. 2002). As the parties have the right to make their own contract, we will not modify the plain meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepted meaning of the language used. *Meeting House Lane, Ltd.*, 628 A.2d at 857.

… [T]he terms of a contract are ambiguous if the terms are reasonably or fairly susceptible of different constructions and are capable of being understood in more than one sense. *Cordero*, 794 A.2d at 900. Additionally, we will determine that the language is ambiguous if the language is "obscure in meaning through indefiniteness of expression or has a double meaning." *Baney*, 784 A.2d at 136. Where the language of the contract is ambiguous, the provision is to be construed against the drafter. *Cordero*, 794 A.2d at 900.

*State Farm Fire & Cas. Co. v. PECO*, 54 A.3d 921, 928 (Pa. Super. 2012) (quoting *Profit Wize Marktg. v. Wiest*, 812 A.2d 1270, 1274-75 (Pa. Super. 2002)).

The Agreement addressed the disposition of the Property, upon termination of the relationship between Clifton and Bruscemi, as follows:

3. The consideration for this transfer is that [Bruscemi] agrees to grant [Clifton] the first right of first refusal to purchase the residence at any time at [*sic*] the real estate assessed value less $60,000 as indicated in the following sentence. If the residence is sold at any time to any entity, [Clifton] shall receive the first $60,000 of the gross sale price before expenses with the

- 5 -

net remainder split between [Clifton] and [Bruscemi] as joint owners of the property.

4. If the relationship of [Clifton] and [Bruscemi] should terminate, then [Bruscemi] agrees to transfer the residence immediately, upon vacating the property, back to [Clifton] in exchange for payment by [Clifton] to [Bruscemi] of 50% of the assessed value of the [P]roperty at the time of termination less $60,000.

Agreement, ¶¶ 3, 4.

The Agreement between the parties states that prior to its execution, Clifton was the sole owner of the Property. *Id.*, ¶ 1. By a Deed dated August 30, 2003, Clifton transferred the Property, "in one[-]half interest" to Bruscemi. *Id.*, ¶ 2. The parties do not dispute that the relationship between Clifton and Bruscemi terminated. The Agreement is unambiguous that upon termination of the relationship, Bruscemi is to transfer the Property to Clifton, "upon vacating the property[.]" *See id.*, ¶ 4. The Agreement makes no reference to fault for the termination of the relationship, and does not include an alternative in which Bruscemi may remain in possession of the Property. As the trial court correctly concluded,

[t]o be ambiguous, the [A]greement has to be capable of being understood in more than one sense. *See Hutchinson v. Sunbeam Coal Co.*, 513 Pa. 192 at 201, 519 A.2d 385 at 390 (1986). The omitted provisions and the unilateral unlimited right provided to [] Clifton do not have the effect of giving what is set forth in the [A]greement more than one meaning….

Trial Court Opinion, 2/13/14, at 2-3. Because the Agreement's language is clear, and not capable of more than one meaning, we cannot grant Bruscemi relief on this claim.[1]

In her second claim, Bruscemi asserts that the trial court improperly interpreted the paragraph 3 of the Agreement, which afforded a $60,000 credit for Clifton. Brief for Bruscemi at 10. Bruscemi argues that the trial court ignored the intent of the parties regarding Clifton's initial $60,000 investment in the Property. *Id.* at 11. Specifically, Bruscemi argues that

> [t]he [A]greement was to have reflected nothing more than "reimbursement" of [Clifton's] initial investment in the event of a change to the parties' domestic circumstances—whether such change occurred by dint of a joint decision to sell the house, or by dint of a change in the parties' emotional attachment to each other.

*Id.* Bruscemi further argues that "[t]he difference in the wording of ¶ 3 and ¶ 4 reflects nothing more than scrivener ineptness or a legally sloppy attempt to be concise." *Id.* According to Bruscemi, "[o]nly scrivener ineptness explains why [] Bruscemi in this instance receives none of the equity in the home to which she contributed for 17 years as joint owner notwithstanding her personal liability on the several mortgages the parties executed over the years." *Id.* Bruscemi takes issue with the trial court's interpretation of the Agreement, given its exercise of the court's equitable powers in requiring Clifton to refinance the mortgage. *Id.* at 11 n.3.

---

[1] We accept the trial court's explanation that any statements made during trial did not preclude the trial court's subsequent legal interpretation of the Agreement. *See* Trial Court Opinion, 2/13/14, at 2-3.

In its Opinion, the trial court addressed this claim and concluded that it lacks merit.  Trial Court Opinion, 2/13/14, at 3-4.  We agree with the trial court's determination, as set forth in its Opinion, and affirm on this basis as to Bruscemi's second claim.  ***See id.***

**The Clifton Appeal (No. 107 WDA 2014)**

Clifton presents the following claims for our review:

I.     Whether the trial court erred in dismissing [Clifton's] claims for counsel fees[?]

II.    Whether the trial court erred in making findings unsupported by the evidence that [Clifton's] claims for accounting and damages were offset by contributions of greater than 50% by [Bruscemi?]

III.   Whether the trial court erred in making findings unsupported by the evidence that [Clifton] had utilized self-help, had assaulted [Bruscemi], as to the assessed valuation of the subject [P]roperty and as to the date of termination of the parties' relationship[?]

Brief for Clifton at 4.

Clifton first claims that the trial court improperly dismissed her claim for counsel fees.[2]  ***Id.*** at 8.  Clifton argues that at trial, counsel for both parties agreed that the issue of counsel fees would be bifurcated.  ***Id.*** However, regardless of this agreement, the trial court found in favor of Bruscemi and denied an award of counsel fees without a hearing.  ***Id.***

---

[2] Clifton sought counsel fees pursuant to 42 Pa.C.S.A. § 2503.  Section 2503 provides, in relevant part, that counsel fees may be awarded "as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter."  42 Pa.C.S.A. § 2503(7).

Clifton argues that the trial court's interpretation of the agreement, *i.e.*, that only the *amount* of counsel fees was bifurcated, is in error. *Id.* at 10. According to Clifton, absent a hearing, the trial court had before it no information from which to determine the extent of Bruscemi's alleged bad faith in pursuing frivolous claims, "many of which she abandoned at the eleventh hour, only to raise new claims outside of the pleadings to which [Clifton] had to respond."[3] *Id.*

In its Opinion, the trial court addressed this claim, and concluded that the proceeding was bifurcated only as to a determination of the "amount" of counsel fees, not as to entitlement. Trial Court Opinion, 2/13/14, at 5-6. We agree with the trial court's sound reasoning, as set forth in its Opinion, and affirm on this basis with regard to Clifton's claim for counsel fees. *See id.*

Clifton next claims that the trial court erred "in making findings unsupported by evidence that [Clifton's] claims for accounting and damages were offset by contributions of greater than 50% by [Bruscemi]." Brief for Clifton at 17. Clifton argues that "there was *no* evidence put on by Bruscemi to quantify the amounts she allegedly paid on behalf of [Clifton]." *Id.* (emphasis in original). Although Bruscemi claimed that she had paid more

---

[3] In support of her claim, Clifton points out, *inter alia*, that Bruscemi failed to plead an ambiguity in the Agreement. Brief for Clifton at 12. Although Bruscemi referred to "fraud" in her Answer, Clifton contends, fraud is not pled in New Matter, and without the particularity required by law. *Id.* at 14. Clifton asserts that she was forced to prepare for a claim of fraud. *Id.*

than her 50% share of expenses over the years, Clifton argues, Bruscemi presented no evidence as to how the amount paid by Bruscemi. *Id.* Clifton contends that Bruscemi's evidence only confirmed the amounts paid by Clifton. *Id.*

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. Trial Court Opinion, 2/13/14, at 6-7. We agree with the trial court's reasoning, as set forth in its Opinion, and discern no abuse of discretion or error in this regard. Accordingly we affirm on the basis of the trial court's Opinion with regard to this claim. *See id.*

Finally, Clifton claims that the trial court erred in determining (1) that she had utilized "self-help" and assaulted Bruscemi, (2) the value of the property, and (3) the date of termination of the relationship between Clifton and Bruscemi. Brief for Clifton at 18. Clifton argues that these findings are not supported by evidence, and the trial court erred in making its credibility determinations. *Id.*

On appeal in cases arising from a non-jury trial, "[w]e will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." *J.J. Deluca Co. v. Toll Naval Assocs.*, 56 A.3d 402, 411 (Pa. Super. 2012) (citation omitted).

In its Opinion, the trial court explained its findings and credibility determinations. Trial Court Opinion, 2/13/14, at 7-8. The trial court's findings are supported in the record, and we cannot conclude that the trial court's determinations were manifestly erroneous, arbitrary, capricious or flagrantly contrary to the evidence. *See **J.J. Deluca Co.***, 56 A.3d at 411. Accordingly, we affirm on the basis of the trial court's Opinion with regard to Clifton's final claim. ***See*** Trial Court Opinion, 2/13/14, at 7-8.

Order and Judgment affirmed.

Ford Elliott, P.J.E., joins the memorandum.

Shogan, J., files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/26/2015

- 11 -