**Claire L. KROPA, Appellant**

**v.**

**GATEWAY FORD, Richard F. Adams, Discover Property & Casualty Insurance Company, and Sedgwick Claims Management Services, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued March 18, 2009.

Filed May 15, 2009.

Reargument Denied July 21, 2009.

---

**10.** We add that there is no express prohibition in the Pennsylvania Constitution against continuing appropriations, and Stilp makes no assertion that continuing appropriations are *per se* unconstitutional.

Joseph P. Lenahan, Scranton, for appellants.

Robert Foster, Philadelphia, for Gateway and Discovery, appellees.

BEFORE: BOWES, DONOHUE, and FREEDBERG, JJ.

OPINION BY FREEDBERG, J.:

¶1 Appellant, Claire Kropa, appeals from the order entered on July 21, 2008, granting summary judgment in favor of Gateway Ford ("Gateway") and Appellee, Discover Property & Casualty Insurance Company ("Discover"). We affirm.

¶2 Appellant's vehicle was struck from behind by a vehicle driven by Richard F. Adams ("Adams"). Adams was intoxicated. Adams was driving a 2006 Ford Focus, a "service loaner" provided to him by Gateway. When Adams acquired the vehicle from Gateway, he was required to sign

a rental/loaner agreement ("Agreement"). The Agreement provides, in part:

> Where state law requires [Gateway] to provide auto liability insurance ... [Gateway] provide[s] auto liability insurance (the "Policy") that is secondary to any other valid and collectible insurance ... The Policy provides bodily injury and property damage liability coverage with limits no higher than the minimum levels prescribed by the financial responsibility laws of the state where the damage or loss occurs.

Motion for Summary Judgment filed on behalf of Gateway and Discover, Exhibit B (Agreement), p. 2 ¶ 7. Gateway provided the vehicle with state-mandated, primary insurance coverage ("Primary Policy") through Discover.

¶ 3 Appellant filed suit against Adams. Discover determined that Adams was entitled to coverage under the Primary Policy which includes as insured, "[a]ny 'authorized driver' while operating a covered 'auto' in accordance with the terms and conditions of an auto rental agreement with [Ford Motor Company]." Motion for Summary Judgment filed on behalf of Gateway and Discover, Exhibit C (Primary Policy), p. 19 ("authorized driver clause"). Thereafter, Discover responded to Appellant with an offer of $15,000.00, the coverage limit of the Primary Policy in Pennsylvania.[1] Primary Policy, at 27. This offer was tendered through third party administrator Sedgwick Claims Management Services, Inc. ("Sedgwick").

¶ 4 Gateway maintained an excess insurance policy on the vehicle ("Excess Policy"), also obtained through Discover. This policy provided an additional $10 million in comprehensive auto liability coverage. Motion for Summary Judgment filed on behalf of Gateway and Discover, Exhibit D (Excess Policy), p. 2. The Excess Policy insured all those covered under the Primary Policy, with the following exclusion:

> Item G. WHO IS AN INSURED is changed by adding the following:
>
> The following are not an insured under this policy:
>
> Any "authorized driver" while operating a covered "auto" in accordance with the terms and conditions of an "auto" rental agreement with [Ford Motor Company].

Excess Policy, at 7.

¶ 5 Appellant demanded that Discover extend coverage to Adams under the Excess Policy. Discover refused, contending that the Excess Policy does not cover Gateway customers.

¶ 6 Appellant filed a complaint on August 31, 2007, seeking declaratory judgment that Gateway's Excess Policy provides coverage to Adams. On September 20, 2007, Gateway, Sedgwick and Discover filed a joint answer with new matter. Adams did not file an answer to the complaint. Appellant replied to the new matter on September 28, 2007. After the close of discovery, Gateway and Discover filed a joint motion for summary judgment on May 19, 2008. On May 29, 2008, Appellant filed a cross-motion for summary judgment. On July 15, 2008, the trial judge heard oral argument on the cross-motions for summary judgment. On July 21, 2008, the trial judge issued an opinion and order granting the joint motion for

---

1. This offer represented the statutory minimum limit of automobile liability coverage required under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.* Section 1702 defines financial responsibility as "[t]he ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident." 75 Pa.C.S.A. § 1702.

summary judgment filed by Gateway and Discover.

¶ 7 Appellant filed a notice of appeal on August 13, 2008. The trial court did not order a Pa.R.A.P. 1925(b) statement, and no such statement was filed. Appellant raises four issues on appeal: (1) whether the Excess Policy is a separate policy from the Primary Policy, (2) whether the trial court should have construed policy provisions found in both the Primary Policy and the Excess Policy in the same manner, (3) whether the authorized driver clause found in both policies is ambiguous and (4) whether Adams was covered as an insured under both the Primary Policy and the Excess Policy.

■■■ ¶ 8 The interpretation of an insurance contract is a matter of law and is generally performed by a court. *Madison Construction Co. v. Harleysville Mutual Ins. Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999). The goal of insurance contract interpretation is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Madison Construction,* 735 A.2d at 106, *quoting Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n,* 512 Pa. 420, 517 A.2d 910, 913 (1986). Our review of an order granting or denying a motion for summary judgment is well established:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment

as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Northern Ins. Co. of New York v. Resinski,* 827 A.2d 1240, 1242 (Pa.Super.2003), *quoting Pappas v. Asbel,* 564 Pa. 407, 768 A.2d 1089, 1095 (2001), *cert. denied,* 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002).

■■■ ¶ 9 Appellant contends that Discover's Primary Policy and Excess Policy are separate and distinct. Therefore, according to Appellant, identical language found in both policies may be construed differently and should be construed in a manner which affords the greatest possible protection to Adams. *See, e.g., Bombar v. West American Insurance Co.,* 932 A.2d 78 (Pa.Super.2007) ("Policy clauses providing coverage are interpreted in a manner which affords the greatest possible protection to the insured."). According to Appellant, the authorized driver clause should be construed broadly in the Primary Policy, but narrowly in the Excess Policy. If construed properly, Appellant concludes, Adams is entitled to coverage under both policies. This argument is not persuasive.

■■■ ¶ 10 Discover's Excess Policy is a following form policy. By definition, a following form policy incorporates terms from an underlying, primary policy. *See Planet Ins. Co. v. Ertz,* 920 S.W.2d 591, 593–594 (Mo.App.1996)[2], *citing* Rowland

---

**2.** "Excess insurance can be classified by type: 'true excess' or 'umbrella' and by form: 'following form' and 'stand alone.' A true excess policy provides coverage above a primary policy for specific risks. An umbrella policy provides coverage over more than one policy, and may cover risks not covered by the primary policy. A following form policy has the same terms and conditions as the primary policy, but has a different liability limit. A stand alone policy has its own terms and

H. Long, 3 *The Law of Liability Insurance* § 22.03 (1995). By its own terms, the Excess Policy provides additional coverage to those insured by the Primary Policy and incorporates Primary Policy terms and conditions:

> We will pay on behalf of the insured "ultimate net loss" in excess of the "underlying policies" shown in Item 6 of the Declarations and which arises out of injury or damage as covered and defined in the "controlling underlying policies" shown in Item 7 of the Declarations. **EXCEPT AS OTHERWISE PROVIDED BY THIS POLICY,** this policy shall follow all the terms, conditions, definitions and exclusions of the "controlling underlying policies."

Excess Policy, p. 8 ¶ A (emphasis in original). Therefore, we may not treat these policies in isolation, because to the extent the Excess Policy incorporates terms identified or defined in the Primary Policy, those terms must be afforded the same meaning.[3] To conclude otherwise would jeopardize the clear intent of a drafter's terms, and a court may not manufacture ambiguity or conflict in an agreement.

*See Madison Construction,* 735 A.2d at 106, *citing Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659, 663 (1982) (discussing the importance of adhering to the plain meaning rule of contract interpretation). Further, at worst, such interference risks producing terms which are mutually repugnant. *See generally Nationwide Ins. Co. v. Horace Mann Ins. Co.,* 759 A.2d 9 (Pa.Super.2000) (discussing remedies to the "unintended absurdity" produced by mutually repugnant terms).

¶ 11 The Excess Policy is not separate and distinct from the Primary Policy, but rather an extension thereof. In effect, the Primary Policy and Excess Policy work in conjunction to create a tiered policy structure: on the broader, primary tier Discover has defined coverage to include "authorized drivers," but on the narrower, excess tier Discover has excluded "authorized drivers" from coverage.

¶ 12 This is not a novel approach to insurance coverage. Discover cites to a recent case in which this Court addressed a similar, tiered policy structure. *Cordero v. Potomac Ins. Co. of Illinois,* 794 A.2d 897 (Pa.Super.2002). In *Cordero,* a cus-

---

conditions that may vary from the primary policy." *Id.*

**3.** Our conclusion comports with an observation noted in a recent federal decision:

> [A] following form excess policy often incorporates by reference the terms and conditions of the underlying policy. It is well settled that the obligations of following form excess insurers are defined by the language of the underlying policies, except to the extent that there is a conflict between the two policies, in which case the wording of the excess policy will control.

*Lexington Ins. Co. v. Western Pennsylvania Hosp.,* 318 F.Supp.2d 270, 274 n. 3 (W.D.Pa. 2004), *quoting* Barry R. Ostrager, et al., Handbook on Insurance Coverage Disputes, 817–18 (11th ed., Aspen L. & Bus.2002) (citations omitted); *Associated Indemnity Corp. v. Dow Chemical Co.,* 814 F.Supp. 613, 618 n. 5 (E.D.Mich.1993) (noting that primary and fol-

lowing form policies should be construed consistently, else the insured's "reasonable expectations of having a meaningful and coordinated insurance program in place might be frustrated"); *W.R. Grace & Co. v. Hartford Accident & Indemnity Co.,* 407 Mass. 572, 555 N.E.2d 214, 221 (1990) (stating that excess policy "should be interpreted consistently with similar language in the underlying policy"). In this context, "conflict" is not synonymous with a coverage exclusion, but rather refers to provisions in respective contracts which are irreconcilable. *See Nationwide Ins. Co. v. Horace Mann Ins. Co.,* 759 A.2d 9 (Pa.Super.2000); *see also Home Ins. Co. v. American Home Products Corp.,* 902 F.2d 1111, 1113 (2d Cir.1990) (finding that a following form excess policy followed underlying policy only to the extent that the policies were consistent).

tomer brought his vehicle in to be serviced and received a loaner car in return. *Cordero*, 794 A.2d at 898. Thereafter, the customer was involved in an accident resulting in serious injuries to two passengers and the death of another. *Id.* The injured passengers and the administrators of the estate of the deceased passenger brought a declaratory judgment action seeking a determination that the customer was entitled to coverage under the service company's primary insurance policy and its commercial umbrella policy. *Id.* at 899. The umbrella policy provided excess, following form coverage. *Id.* at 901.

¶ 13 In *Cordero*, we recognized that coverage under the excess policy was "subject to the same terms, conditions, agreements, exclusions and definitions as the underlying insurance," but noted that coverage under the primary policy was provided merely to comply with Pennsylvania's required financial responsibility law. *Id.* at 901–902. Because coverage under the primary policy was expressly limited to the financial responsibilities imposed by the state of Pennsylvania, we determined that coverage under the excess policy was not appropriate, nor intended by the service company or its insurance provider. *Id.* at 902.

> An auto dealer may well purchase umbrella coverage to protect his or her business; however, he or she will not likely purchase such additional coverage for his or her customers. This is particularly so where, as here, the law does not require it. We specifically conclude that the [excess insurance policy] was designed to expand the amount, but not the scope of coverage. Statutes mandating minimum primary coverage are

not intended to affect umbrella policies, whose purpose is to protect the assets of the named insured and not the customers' assets. Simply put, because [the customer's] primary coverage under [the primary policy] was by virtue of the statutory mandates, he was not entitled to coverage under the [excess insurance policy].

*Id.* (internal citations omitted).

¶ 14 Similarly, Discover's Primary Policy expressly limited coverage of authorized drivers to the financial responsibilities imposed by the state of Pennsylvania:

> For any 'authorized driver,' this Coverage Form provides primary insurance up [to] the applicable financial responsibility limits in the states where … the owner of the rental auto must provide primary auto liability insurance.

Primary Policy, at 25. Therefore, in addition to the clear exclusion set forth in the Excess Policy, this reference to the limits of the financial responsibility law of Pennsylvania establishes the clear intent of Discover to exclude Adams from coverage under the Excess Policy.

■ ¶ 15 Appellant also maintains that the authorized driver clause is ambiguous because it refers to an "auto rental agreement" but omits any reference to a "loaner agreement." According to Appellant, this omission creates an ambiguity because Adams was driving a loaner car, and not a rental car. Relying upon this premise, Appellant argues as before that the clause should be construed broadly in the Primary Policy, but narrowly in the Excess Policy, thus affording Adams coverage under both policies.[4]

---

4. In the alternative, Appellant contends that exclusion provisions are inherently ambiguous, citing *United Services Auto. Assoc. v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982 (1986) *("Elitzky")*, and therefore, the authorized

driver clause exclusion in the Excess Policy should be construed against Appellee. This contention overstates the skepticism with which a court will approach the interpretation of a coverage exclusion. Though it is

¶ 16 "When analyzing an insurance policy, a court must construe words of common usage in their natural, plain, and ordinary sense." *Continental Cas. Co. v. Pro Machine*, 916 A.2d 1111 (Pa.Super.2007), *citing Mitsock v. Erie Ins. Exchange*, 909 A.2d 828, 831 (Pa.Super.2006). If "the language of the [insurance] contract is clear and unambiguous, a court is required to give effect to that language." *Mitsock v. Erie Ins. Exchange*, 909 A.2d at 831, *quoting Madison Construction*, 735 A.2d at 106.

¶ 17 The provisions of an insurance contract are ambiguous if its terms "are subject to more than one reasonable interpretation when applied to a particular set of facts." *Wagner v. Erie Ins. Co.*, 801 A.2d 1226, 1231 (Pa.Super.2002), *quoting Madison Construction*, 735 A.2d at 106. "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Id.* (other citations omitted); *Eichelberger v. Warner*, 290 Pa.Super. 269, 434 A.2d 747 (1980). Nevertheless, a court must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity," *Mitsock v. Erie Ins. Exchange*, 909 A.2d at 831, *quoting Madison Construction*, 735 A.2d at 106.

¶ 18 Appellant draws a distinction between an "auto rental agreement" and a hypothetical "loaner agreement." However, there is but one Agreement and it clearly applies to both rental cars and loaner cars:

> **RENTAL OR LOANER** ... If You are obligated to pay Us a time or mileage fee for use of this Vehicle, this Agreement is a contract for rental of the Vehicle. If You are not obligated to pay Us a time or mileage fee for use of the Vehicle, this Agreement is a contract for loan of the Vehicle only.

Agreement, p. 2 ¶ 2. The only reasonable interpretation of the authorized driver clause is that an "auto rental agreement" refers to the Agreement, whether or not Adams paid a fee. The clause is not ambiguous.

¶ 19 Moreover, even were we to accept Appellant's contention that the authorized driver clause is ambiguous, our examination of the Agreement reveals that it expressly limits any insurance coverage to the financial responsibility mandated by the law of Pennsylvania. Agreement, at 2 ¶ 7. Thus, Appellant could harbor no reasonable expectation of coverage under the Excess Policy. *Bombar v. West American Insurance Co.*, 932 A.2d 78, 87 (Pa.Super.2007) ("The insured's reasonable expectations are the focal point in reading the contract language."), *quoting Dorohovich v. West American Ins. Co.*, 403 Pa.Super. 412, 589 A.2d 252, 256 (1991).

¶ 20 Order affirmed.

well settled that exclusions to an insurer's liability are narrowly construed against the insurer, *see e.g. Pecorara v. Erie Ins. Exchange*, 408 Pa.Super. 153, 596 A.2d 237 (1991), *Elitzky* makes no broad declaration as to the inherent ambiguity of exclusion provisions. Rather, *Elitzky* analyzed the proper interpretation of the words "intended" and "expected." *Elitzky*, 517 A.2d at 986. In this narrow context, we noted "courts have been unable to reach a consensus as to the correct interpretation of the word 'intended' when it appears in ... an exclusionary clause." *Id.* at 986. After examining precedent from several jurisdictions, we held "as a matter of law, such clauses are ambiguous and must be construed against the insurer." *Id.* at 987. Here, the authorized driver clause does not include the words "intended" or "expected," and therefore, *Elitzky* is not relevant to our consideration.