J-A24024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| ERIE INSURANCE EXCHANGE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHRISTIANA MONTESANO, | : | No. 262 EDA 2021 |
| ANTHONY MONTESANO, AND DONNA | : | |
| MONTESANO | : | |

Appeal from the Judgment Entered March 30, 2021
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2016-13318

BEFORE:   LAZARUS, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:              **FILED FEBRUARY 24, 2022**

Erie Insurance Exchange (Erie) appeals from the judgment,[1] entered in

the Court of Common Pleas of Montgomery County, in favor of Appellees,[2]

Christiana   Montesano,   Anthony   Montesano,   and   Donna   Montesano

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] While Erie purports to appeal from the December 31, 2020 order denying its motion for post-trial relief, the appeal properly lies from the subsequent entry of judgment on the trial court's verdict. ***See U.S. Bank, N.A. v. Pautenis***, 118 A.3d 386, 388 n.2 (Pa. Super. 2015) (providing appeal to Superior Court can only lie from judgment entered after trial court's disposition of post-verdict motions, not from order denying post-trial motions).  We have amended the caption accordingly.

[2] The trial court dismissed Erie's claims against defendant, GEICO General Insurance Company, on October 27, 2016, when it granted GEICO's motion for judgment on the pleadings.  Thus, GEICO is not a party to the instant appeal.

(collectively, Appellees), after the trial court entered a verdict in favor of Appellees in the amount of $200,000.00. Because the trial court correctly concluded that Christiana is a "resident," as defined by Erie's insurance policy, we affirm.

Christiana's father, Anthony, and Christiana's mother, Doris Krupp, divorced when Christiana was two years old. Christiana lived with Anthony and her step-mother, Donna, in their Boyertown, Montgomery County residence (Boyertown Home), from her birth through her graduation from high school in 2013. Christiana would visit Krupp, who lives in Mims, Florida, for one month every summer and for one week every other Christmas.

At the time of the underlying accident, Anthony and Donna owned three motor vehicles; each vehicle was insured by Erie under a Family Auto Insurance Policy (Policy). Under the Policy, the term "resident" is defined as "a person who physically lives with 'you' in 'your' household on a regular basis." Erie Insurance Policy, 2/14/13, at 4. The Policy also states that "'[y]our' unmarried, unemancipated children attending school full time, living away from home, will be considered 'residents' of 'your' household." *Id.*

On August 3, 2013, following an argument[3] with Anthony and Donna and without their knowledge, Christiana left the Boyertown Home and flew to

---

[3] Christiana testified that the argument stemmed from her seeing an older paramour that Anthony and Donna did not approve of and Christiana lying to them about staying at a girlfriend's house for the weekend, when she was with the paramour. *Id.* at 23; *see id.* at 82 (Donna testifying that "they had an
*(Footnote Continued Next Page)*

Mims, Florida, and stayed with Krupp. Christiana had not talked to Krupp since 2011.[4] Christiana took "[s]ome clothing and a couple of shoes, deodorant, [a] toothbrush, toothpaste[, and] underwear" from the Boyertown Home with her to Florida. N.T. Non-Jury Trial, 3/2/20, at 26. Christiana did not take her computer or any jewelry to Florida and did not make any arrangements to have those items shipped from the Boyertown Home to Florida.[5] Christiana retained her key to the Boyertown Home and continued to receive mail there. *Id.* at 91.

In Florida, Christiana slept on the couch in Krupp's two-bedroom trailer home, with Christiana's two sisters and five dogs and three cats, for approximately one month. N.T. Non-Jury Trial, 3/2/20, at 26. While in Florida, Christiana obtained a state-issued driver's license and registered to vote.

---

argument about the fact that she had lied as to where she was and who she was with, [and with] whom she had spent the weekend."). Christiana also testified that because Anthony and Donna told her they "couldn't trust [her] on foot, [then they] they couldn't' trust [her] in a car, so they weren't going to take [her] for [her] license." *Id.* at 23; *Id.* 82 (Donna testifying she and Anthony did not trust Christiana after she lied to them so they would not let her get driver's license).

[4] Christiana testified that the reason she had not spoken to her mother in years was because her mother got upset with her after Christiana told her father that her sister planned to stay in Florida with her mother after they last visited in 2011. N.T. Non-Jury Trial, 3/2/20, at 24, 25.

[5] At the time she left to go to Florida, Christiana had a Pennsylvania-state-issued driver's learning permit.

"Seeking a change of scenery," *id.* at 29, Christiana left Krupp's home in September 2013 to visit her maternal grandparents in Warrior, Alabama. *Id.* Upon her arrival in Alabama, Christiana obtained an Alabama-state-issued driver's license, transferred her voter registration, and purchased a new month-to-month cell phone plan through an Alabama wireless service provider. Christiana's grandmother, Robin Lee Jafolla (Jafolla), permitted Christiana to drive the Jafollas' vehicle, which was insured by GEICO. Christiana had her own bedroom in the Jafollas' house and worked part-time in a local retail store. Although Christiana considered getting a massage therapy license in Alabama and received mail from local technical schools at the Jafollas' home, she did not enroll in any program in Alabama. *Id.* at 32.

In early December 2013, Christiana returned, with Krupp, to Boyertown, Pennsylvania, to be deposed in an unrelated lawsuit. During this visit, Christiana stayed at a hotel. Christiana did, however, visit the Boyertown Home for dinner. At dinner, Christiana reconciled with Anthony and Donna and told them that she "wanted to come back home." *Id.* at 38. Christiana decided that she would take her scheduled flight back to Alabama to retrieve her personal items and then return to the Boyertown Home sometime in January. *Id.* at 39, 44, 46.

Christiana returned to Alabama after her short visit to Pennsylvania and decided to drive back to Florida with Krupp from Alabama after they celebrated the Christmas holiday with the Jafollas. Christiana planned to fly home to Pennsylvania from Orlando on January 8, 2014. *Id.* at 41, 48, 81. However,

on her drive to Florida on January 2, 2014, Christiana sustained injuries in a motor vehicle accident near Tallahassee, Florida, while a passenger in Krupp's Dodge Caravan.[6]  Following the accident, Christiana presented a claim for underinsured motorist benefits (UIM) to Erie under the Policy.  Erie investigated Christiana's claim for UIM benefits and ultimately concluded that Christiana did not qualify as a "resident" of the Boyertown Home because she had not been physically living there on a regular basis at the time of the accident.[7]

On July 1, 2016, Erie filed a declaratory judgment action seeking interpretation of the Policy and a determination that, pursuant to the language of the Policy, Erie was not obligated to provide UIM coverage to Christiana. On September 15, 2016, Appellees filed a response to Erie's complaint and asserted a counterclaim for declaratory relief.  Appellees asserted a right to

---

[6] Krupp and Christiana's sister, Melissa Ann, were also in the vehicle at the time of the accident.  Tragically, Krupp was fatally injured in the accident. Christiana spent two weeks in a Florida hospital and two weeks in a Florida rehabilitation facility following the accident, ultimately returning to Pennsylvania in March 2014, once she could put full weight on both of her legs. *Id.* at 49.

[7] With respect to UIM benefits, the Policy provided coverage for:

> a person who physically lives with a [named insured] in [a named insured's household] on a regular basis.  [A named insured's] unmarried, unemancipated children attending school full time, living away from home, will be considered "residents" of [a named insured's] household.

Erie Insurance Policy, 2/14/13, at 4.

UIM coverage based on Christiana's status as a resident physically living in the Boyertown Home on a regular basis,[8] claimed that the Policy did not require that Christiana physically live in the Boyertown Home at the time of the accident for coverage to attach, and characterized Christiana's stay in Florida and Alabama as a "teenager's extended but temporary visit [with] her mother and grandmother." Answer and Counterclaim, 9/15/16, at ¶ 38.

The parties filed cross-motions for summary judgment. On September 19, 2018, the trial court denied the motions, concluding that, in this "fact intensive inquiry," the existence of genuine issues of material fact precluded entry of judgment as a matter of law in favor of either party. Order, 9/19/18, at 1 n.1. On December 18, 2019, the parties entered into a stipulation, later approved by court order, providing that the court decide whether Christiana qualifies as an insured under the Erie Policy. Stipulation and Order, 12/18/19. Pursuant to the stipulation, if the court determined that Christiana qualified as an insured, Erie would be liable for $200,000.00 representing the full amount of the UIM policy limits. *Id.*

The trial court held a bench trial on March 2, 2020, at which Christiana, Donna, and Jafolla testified. After considering the testimony, which the court found credible,[9] as well as the evidence presented and the parties' post-trial

---

[8] Appellees conceded that the Policy did not define the term "regular basis." *Id.* at ¶ 9.

[9] *See* N.T. Non-Jury Trial, 4/26/21, at 33 ("This court found the witnesses very credible.").

memoranda, the trial court found in favor of Appellees and against Erie, concluding that Christiana qualified as an insured under the Policy language and ordering Erie to pay Appellees $200,000.00, representing the full amount of the Policy limits. *See* Order, 9/1/20.

In its decision, the court specifically found that Christiana had been merely a "houseguest" at the Krupp and Jafolla homes. Trial Court Decision, 9/1/20, at ¶ 94. It concluded that, at the relevant time, Christiana had been living in the Boyertown Home on a regular basis based on the following, non-exhaustive list of factors:

- Christiana maintained a bedroom at her Boyertown home;

- With the exception of a few articles of summer clothing, shoes and toiletries, Christiana left behind her computer, bed, desk, suitcases, jewelry, [and] shoes to go visit [Krupp] and then [the Jafollas] in August of 2013;

- She took meals at her Boyertown home for nineteen (19) years before leaving to visit, and then again in early December of 2013[,] and again in March of 2014 through 2016;

- Christiana continued to receive mail at her Boyertown home that was never forwarded;

- Christiana maintained a key to [the] Boyertown house;

- She obtained a driver's permit at [the] Boyertown home[, which] she later used for identification;

- Christiana continuously resided at the [Boyertown H]ome and spent a significant amount of time there for nineteen years before leaving to visit [Krupp], returning to the [Boyertown H]ome in early December of 2013, eating dinner and spending time in her room;

- She returned to [the] Boyertown home in early March of 2014[,] and resided there continuously until at least December of 2016; and

- Christiana's [tax returns] filed in the years 2013 and 2014 listed the Boyertown address as her residence[.]

*Id.* at ¶ 92.  The court deemed Christiana's August and September 2013 visits to the Krupp and Jafolla homes "sporadic and temporary" like her visits to those residences in prior years.  *Id.* at ¶ 97. Finally, the court concluded that "[a]lthough as a question of physical fact, Christiana was making her way from her grandmother's home to her home in Boyertown at the time of the accident, for all intents and purposes, her true and permanent residence was the Boyertown home." *Id.* at ¶ 100.

On September 10, 2020, Erie filed a post-trial motion for judgment notwithstanding the verdict (JNOV) arguing that the trial court's legal conclusions were against the weight of the evidence and erroneous as a matter of law.  The trial court denied Erie's motion and entered judgment in favor of Appellees.  Erie filed a timely appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  On appeal, Erie raises the following issues:

(1)    Whether the trial court committed an error of law in finding that [Christiana] qualified as an insured pursuant to the terms and provisions of the [Policy] because [Christiana] did not physically live with [Anthony and Donna] at the time of the motor vehicle accident and thus was not a resident as defined by the applicable insurance policy?

(2)    Whether the trial court erred by considering [Christiana's] "intentions" regarding her residence as opposed to considering only her physical presence at the time of the

motor vehicle accident as required by decades of law in the Commonwealth of Pennsylvania?

(3) Whether the trial court committed an error of law in denying [Erie's m]otion for [p]ost-[t]rial [r]elief seeking [JNOV] as there was insufficient competent evidence to support the verdict that Christiana [] was a resident as defined by the applicable insurance policy such that the verdict was against the law? [10]

(4) Whether the trial court committed an error of law in denying [Erie's m]otion for [p]ost-[t]rial [r]elief seeking a new trial as the court's verdict was against the weight of the evidence and did not support the verdict that Christiana [] was a resident as defined by the applicable insurance policy such that the verdict was against the law?

(5) Whether the trial court committed an error of law in denying [Erie's m]otion for [s]ummary [j]udgment where no dispute existed in the factual record that [Christiana] failed to meet the contractual and legal definition of residency for the purpose of affording insurance coverage?

Appellant's Brief at 5-7 (footnotes added).

Erie's first two issues challenge the trial court's verdict in favor of Appellees.

Our review in a non-jury case is limited to "whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law."

---

[10] Erie has waived its third and fourth issues on appeal due to its failure to include any argument on the claims, including no citation to relevant legal authority or legal discussion, in its appellate brief. **See** Pa.R.A.P 2119(a) (argument section of brief shall "be divided into as many parts as there are questions to be argued"); **see also In re D.R.-W.**, 227 A.3d 905, 910-11 (Pa. Super. 2020) (where appellant, in parental termination case, made no effort in brief to analyze relevant statutory subsections of Adoption Act, failed to cite or discuss Adoption Act entirely, but instead focused on claim that trial court terminated parental rights based on mechanical application of section of Juvenile Act, issue waived due to lack of discussion and no citation to relevant legal authority).

> ***Bonenberger v. Nationwide Mut. Ins. Co.***, [] 791 A.2d 378, 380 ([Pa. Super.] 2002). We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. ***See Terletsky*** [***v. Prudential Property & Casualty Ins. Co.***], 649 A.2d [680,] 686 [(Pa. Super. 1994)]. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. ***See Bonenberger***, 791 A.2d at 381. Thus, the test we apply is "not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion." ***Bergman v. United Servs. Auto. Ass'n***, [] 742 A.2d 1101, 1104 ([Pa. Super.] 1999).

***Hollock v. Erie Ins. Exch.***, 842 A.2d 409, 413-14 (Pa. Super. 2004).

As with all questions of law, an appellate court's review of an insurance contract is plenary. ***Burton v. Republic Ins. Co.***, 845 A.2d 889, 893 (Pa. Super. 2004). In interpreting the terms of an insurance contract, the appellate court examines the contract in its entirety, giving all of the provisions their proper effect. ***Id.*** The court's goal is to determine the intent of the parties as exhibited by the contract provisions. ***Id.*** In furtherance of its goal, the court must accord the contract provisions their accepted meanings, and it cannot distort the plain meaning of the language to find an ambiguity. ***Id.*** However, "[w]here a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." ***Kropa v. Gateway Ford***, 974 A.2d 502, 508 (Pa. Super. 2009).

- 10 -

Erie contends that the trial court incorrectly concluded that Christiana is an "insured" pursuant to the terms and provisions of the Policy—i.e., that Christiana was a "resident" of the Boyertown Residence at the time of the accident. Specifically, Erie argues that, in order for Christiana to be considered a resident under its Policy, she must have been physically living with Anthony and Donna at the time of the accident.[11] We disagree.

As previously stated, the parties specifically defined the term "resident" in the Policy as follows:

> "[R]esident" is defined as "a person who physically lives with 'you' in 'your' household **on a regular basis**." "'Your' unmarried, unemancipated children attending school full time, living away from home, will be considered 'residents' of 'your' household."

Erie Insurance Policy, 2/14/13, at 4 (emphasis added). *Cf. Wall Rose Mutual Ins. v. Manross*, 939 A.2d 958, 965 (Pa. Super. 2007) (when term not defined in policy, court applies common law definition historically used by courts of that jurisdiction to arrive at common-sense decision). In *Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.,* 545 A.2d 343, 346 (Pa. Super. 1988), our Court construed the language "a resident of your household" to "limit coverage to those who actually reside in the household of the insured." *See also Krager v. Foremost Ins. Co.*, 450 A.2d 736, 738 (Pa. Super. 1982)

---

[11] If we were to accept Erie's interpretation of the definition "resident"—that an individual must be physically present at the time of the accident—we would essentially be ignoring the concept of dual residences. In reality, there are multiple situations where an individual could have more than one residence at the same time— for example, a child who spends equal time with divorced parents under a custody arrangement or individuals who split their time between permanent and vacation homes.

(term "resident" in insurance policy, without additional words of refinement, means "[l]iving in a particular place, requiring only physical presence"). Thus, we agree with Erie, that if the Policy only defined a resident as "a person who physically lives with you in your household," the issue of coverage would be controlled by where Christiana was physically living at the time of the accident.

However, unlike in ***Amica***, ***supra***, and ***Krager***, ***supra***, here the Policy's definition of resident also contains the qualifying phrase, "on a regular basis." Erie Insurance Policy, 2/14/13, at 4. The phrase is used to refine the term "resident" and qualify the phrase "lives with 'you.'" ***Id.*** Erie would have us find that the Policy language "on a regular basis" is not ambiguous, and that it "does not change the classical definition of the word 'residence' as defined by years of case law nor can it be considered words of refinement." ***See*** Appellant's Brief, at 29. Appellees, on the other hand, posit that because the phrase "on a regular basis" is not defined in the Policy, the phrase is subject to more than one reasonable interpretation when applied to the facts of this case and, thus, is ambiguous. ***See*** Appellees' Brief, at 13.

Interestingly, there appears to be no other Pennsylvania case in which the specific language "on a regular basis" qualifies the definition of "resident" under an automobile insurance policy. However, when a term in an insurance policy is not defined, the words should "be given a reasonable and normal interpretation." ***Great American Ins. Co. v. State Farm Mut. Auto. Ins. Co.***, 194 A.2d 903, 905 (Pa. 1963). Moreover, a provision of an insurance contract is considered "ambiguous if its terms 'are subject to more than one

reasonable interpretation when applied to a particular set of facts.'" ***Kropa***, ***supra*** at 508. The word "regular" can be defined strictly as something that is "recurring, attending or functioning at fixed, uniform or normal intervals." ***See https://www.merriam-webster.com/dictionary/regular*** (last visited 1/12/22). However, "regular" can also be defined more broadly to simply mean "often." ***See*** https://www.collinsdictionary.com/dictionary/english/regular (last visited 1/12/22) ("Regular events happen often"). Considering the fact that there is more than one reasonable definition of the word "regular," we find the phrase "on a regular basis" to be ambiguous.

The parties clearly sought to specifically define the term "resident;" indeed, the Policy covers individuals who reside *outside* of the insured's home, including "unmarried, unemancipated children attending school full time, living away from home." Erie Insurance Policy, 2/14/13, at 4. The contract does not indicate that this example is exhaustive. Erie could have defined "on a regular basis" in the insurance contract or stated that "the resident must be physically living with the named insured at the time of the incident at issue," but it did not choose to do so. ***See*** Trial Court Opinion, 4/26/21, at 25. The trial court found that such a phrase indicates a broader coverage for individuals who, with some regularity, have lived and will live with the insured, although they physically dwelled elsewhere at the time of an accident. ***See*** ***id.*** at 22, 28 (trial court finding "measure of permanency and habitual repetition occurred at the Montesanos' Boyertown home" and concluding

phrase "on a regular basis" were words of refinement and required "an analysis of the measure of permanency or habitual repetition" under the facts of case); *id.* at 24 (court focusing on "temporary nature of Christiana's visits" to Florida and Alabama). We find this interpretation reasonable under the facts of this case and in line with the well-established precept that ambiguous terms will be "construed in favor of the insured and against the insurer, the drafter of the agreement." *Kropa*, *supra*.

Erie also argues that the trial court conflated Christiana's domicile with her residence when it incorrectly concluded that Christiana's "true and permanent" residence was the Boyertown Home. Specifically, Erie contends that the court should have conducted a "fact-based inquiry into [Christiana's] physical status" and that the court's analysis should not have been "dependent upon [Christiana's] intentions or even her family's beliefs." Appellant's Brief, at 22.

Erie insists that Christiana "invoked historic methods to establish her residency" elsewhere than Pennsylvania, *id.* at 23, pointing out that in both Florida and Alabama, Christiana obtained state-issued driver's licenses and registered to vote. Moreover, Erie highlights the fact that Christiana secured a retail job in Alabama and purchased a cell phone plan with an Alabama number attached to it. Appellant's Brief, at 32-34. Finally, Erie argues that because Christiana did not indicate an exact timeframe as to when she planned to return to Pennsylvania, her move to Alabama and Florida "was more than a vacation." *Id.*

Erie contends that the court should have determined Christiana's "factual place of abode [] at the time of the accident," *id.* at 34, by examining her course of conduct while in Florida and Alabama as well as her physical presence in those states. *Id.* at 37. Nevertheless, that is precisely what the trial court did when it set forth an array of factors it considered in coming to its conclusion that Christiana was a resident of the Boyertown Home at the time of the accident. *See* Trial Court Decision, 9/1/20, at ¶ 92; Trial Court Opinion, 4/26/21, at 28-29. Critically, the court considered the Policy's qualifying language, "on a regular basis" in determining that Christiana was a resident of the Boyertown Home at the time of the accident. The fact that, at the time of the accident, Christiana had reconciled with Anthony and Donna, planned to return to Pennsylvania in January, and had a concrete plan in place to resume living at the Boyertown Home further illustrates the transient nature of her trip to her mother's and grandmother's homes and establishes her "factual place of abode." Accordingly, we concur with the trial court's determination that Christiana's contacts with her Boyertown Home were more than sporadic or temporary, and that they constituted some "measure of permanency or habitual repetition." *Erie Ins. Exch. v. Weryha*, 931 A.3d 739, 744 (Pa. Super. 2007).

Erie also contends that the trial court improperly considered Christiana's "intentions" regarding her residence, where the inquiry should be fact-based and the court is required to consider *only* her physical presence at the time of the tragic automobile accident. Citing *Amica*, *supra*, Erie claims that

Christiana's intent to live at the Boyertown Home is irrelevant when determining whether she is a resident under the Policy. We disagree.

In **Amica**, our Court only held that intent was not the *sine qua non* for determining residency status under an insurance policy that did not include qualifying language in defining the term resident. **Id.** at 347. Here, the court did not rely solely on Christiana's intent in analyzing whether she was a resident under the Policy. Rather, it considered Christiana's intent to return to the Boyertown Home **a** factor, among others, in making that determination. We conclude that the court's consideration of this factor was appropriate where the evidence in the case established that Christiana had more than sporadic or occasional contact with the Boyertown Home, had a clear connection to the Pennsylvania residence, and only intended to temporarily leave that location when she took her sojourns to Florida and Alabama. **See Weryha**, **supra** at 742 ("The question of whether one physically lives with another is a factually intensive inquiry and it requires the trial court to look at a host of factors in reaching a common-sense judgment.").

Despite Erie's argument to the contrary, the law does not require that an insured be physically living in the residence at the time of an accident to be covered under an insurance policy without specific language stating such. **See** Trial Court Opinion, 4/26/21, at 27-28. Here, where at the time of the accident Christiana lived with her father and stepmother in the Boyertown Home on a regular basis, **see** n.3 **supra**, she qualifies as a "resident" as defined by Erie's insurance policy and was entitled to the benefit of coverage.

Considering the evidence that the trial court found credible, the trial court reasonably entered judgment in favor of Appellees. **Hollock**, **supra**.[12]

Judgment affirmed.

Pellegrini, J., joins the Memorandum.

Dubow, J., files a Dissenting Memorandum.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

*Date: 2/24/2022*

_____

[12] In its final issue on appeal, Erie contends that the trial court erred when it denied its motion for summary judgment "where no dispute existed in the factual record that Christian[a] Montesano failed to meet the contractual and legal definition of residency for purposes of affording insurance." Appellant's Brief, at 45. However, Erie's argument on the issues consists of bald claims that "[t]he facts were undisputed," and that "there were no genuine issues of material fact." **Id.** at 46. Although this is the correct standard of review, Erie cites to no facts of record or relevant case law to support the issue— essentially, the brief is devoid of argument on the issue. Thus, we find the issue waived. **See** Pa.R.A.P 2119(a) (argument section of brief shall "be divided into as many parts as there are questions to be argued"); **see also In re D.R.-W.**, 227 A.3d 905, 910-11 (Pa. Super. 2020). However, even if we did not find this issue waived, we would conclude that it merits no relief. Erie's claim that the trial court erred in denying its motion for summary judgment is essentially challenging the sufficiency of the evidence to support the judgment entered on the non-jury verdict below—a claim we have reviewed and determined is meritless. **See supra** at 11-17.